**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE, JOHN DOE, JANE DOE,<br>For themselves and the Proposed Class,<br><br>Plaintiffs,<br><br>v.<br><br>ATRIUS HEALTH, INC.,<br><br>Defendant. | Case No. 1:25-cv-10020-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ATRIUS HEALTH, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


I. BACKGROUND ....................................................................................2

A. The Internet ....................................................................................2

B. Atrius and The Atrius Website ....................................................................................3

C. Plaintiffs and This Litigation ....................................................................................5

D. Massachusetts Web Privacy Litigation ....................................................................................5

II. STANDARD ....................................................................................6

III. ARGUMENT ....................................................................................6

A. Plaintiffs' Federal Wiretap Claim Fails as a Matter of Law ....................................6

1. The Act Does Not Impose Aiding-and-Abetting Liability on Atrius ......... 7

2. The Crime-Tort Exception to One-Party Consent Does Not Apply ........... 8

a. Atrius' Motive Was Allegedly Commercial, Not Criminal or Tortious ....................................................................................9

b. The Alleged Crimes and Torts are Not Separate from the Alleged Interceptions ....................................................................................11

B. Plaintiffs' Privacy Act Claim Should Be Dismissed ............................................13

1. Atrius Did Not Invade Plaintiffs' Privacy ............................................... 13

2. There Was No Invasion into a Private Space Where Plaintiff Had a Reasonable Expectation of Privacy. ....................................................... 13

3. Any Alleged Invasion Was Not Serious .................................................. 15

C. The Breach of Fiduciary Duty / Common Law Duty of Confidentiality Claim Fails ....................................................................................16

D. The Breach of Implied Contract Claim Is Fatally Flawed ....................................18

E. Plaintiffs' Unjust Enrichment Claim Fails ....................................................................19

IV. CONCLUSION ....................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985)....................16, 17

*Am. Hosp. Ass'n v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. 2024)....................11, 14

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024)....................12

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
No. CV 21-10893-RGS, 2021 WL 5918682 (D. Mass. Dec. 15, 2021)....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Attias v. CareFirst, Inc.*,
365 F.Supp.3d 1 (D.D.C. 2019)....................17

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. 2024)....................15

*Bell Atlantic Corp. v. Twombley*,
550 U.S. 544 (2007)....................6

*Carmack v. Nat'l R.R. Passenger Corp.*,
486 F.Supp.2d 58 (D. Mass. 2007)....................13

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................9, 11

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025)....................14

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023)....................11

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)....................12

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................9, 10

*Doe v. Lawrence Gen. Hosp.*,
No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) .......................... *passim*

*Doe v. Tenet Healthcare Corp.*,
731 F.Supp.3d 142 (D. Mass. 2024)............................................................................ 15

*Doe v. Upperline Health, Inc.*,
No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sep. 24, 2024) ...................... 11

*Est. of Moulton v. Puopolo*,
467 Mass. 478 (2014) ................................................................................................ 16

*Flores v. OneWest Bank, F.S.B.*,
172 F.Supp.3d 391 (D. Mass. 2016)............................................................................ 20

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ........................................................................................ 8

*French v. United Parcel Serv., Inc.*,
2 F.Supp.2d 128 (D. Mass. 1998)................................................................................ 13

*Garrity v. John Hancock Mut. Life Ins. Co.*,
No. CIV.A. 00-12143-RWZ, 2002 WL 974676 (D. Mass. May 7, 2002) ............................... 13

*Goulart v. Cape Cod Healthcare, Inc.*,
No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025)............................ *passim*

*Hubbard v. Google*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024).............................. 14, 15

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015)................................................................................ 8

*In re DoubleClick Privacy Litig.*,
154 F.Supp.2d 497 (S.D.N.Y. 2001) ................................................................................ 9

*In re Facebook Internet Tracking Litig.*,
140 F.Supp.3d 922 (N.D. Cal. 2015)............................................................................ 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ............................................................................... 2, 8, 11

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ......................................................................................... 2

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ............................................ 20

*J.R. v. Walgreens Boots All., Inc.*,
470 F.Supp.3d 534 (D.S.C. 2020) .......... 19

*Joiner v. NHL Enters., Inc.*,
No. 23-CV-2083 (LAK), 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) .......... 8

*Katz v. Pershing, LLC*,
806 F.Supp.2d 452 (D. Mass. 2011) .......... 18

*Kelley v. CVS Pharmacy, Inc.*,
No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) .......... 16

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 8

*Korper v. Weinstein*,
57 Mass. App. Ct. 433 (2003) .......... 16

*Kurowski v. Rush Health Sys., Inc.*,
659 F.Supp.3d (N.D. Ill. Mar. 3, 2023) .......... 13

*Leocal v. Ashcroft,*
543 U.S. 1 (2004) .......... 12

*M.C. v. E. Side Health Dist.*,
No. 3:24-CV-01336-NJR, 2025 WL 435992 (S.D. Ill. Feb. 7, 2025) .......... 17

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005) .......... 19

*McCabe v. Ford Motor Co.*,
774 F.Supp.3d 349 (D. Mass. 2025) .......... 6

*McManus v. Tufts Med. Ctr., Inc.*,
No. 25-CV-10008-ADB, 2025 WL 2778025 (D. Mass. Sep. 29, 2025) .......... 5, 6, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F.Supp.3d 1072 (W.D. Wash. 2024) .......... 19

*Okash v. Essentia Health*,
No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 17

*Reidy v. UMass Mem'l Med. Ctr., Inc.*,
No. 2085-CV-01101, 2021 WL 6777622 (Mass. Super. June 17, 2021)................................. 19

*Santoro v. Tower Health*,
No. CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024).............................................. 14

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
567 N.E.2d 912 (Mass. 1991)........................................................................................... 15, 16

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ................................................................................................... 15

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)................................................................................................ 11

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024).......................... *passim*

*Taylor v. UKG, Inc.*,
693 F.Supp.3d 87 (D. Mass. 2023)......................................................................................... 17

*Tedeschi-Freij v. Percy L. Grp.*,
99 Mass. App. Ct. 772 (2021) ................................................................................................ 19

*Thomas v. Spaulding*,
No. 1:19-CV-11982-NMG, 2021 WL 3516474 (D. Mass. Aug. 10, 2021) ............................. 20

*Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*,
496 Mass. 197 (2025)............................................................................................................. 20

*Tucker v. Marietta Area Health Care, Inc.*,
No. 2:22-CV-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ....................................... 18, 19

*Tyler v. Michaels Stores, Inc.*,
840 F.Supp.2d 438 (D. Mass. 2012)....................................................................................... 20

*United States v. Cassiere*,
4 F.3d 1006 (1st Cir. 1993) ..................................................................................................... 9

*United States v. Gabrielian*,
No. CR SAG-22-336, 2024 WL 2384148 (D. Md. May 22, 2024) ......................................... 11

*United States v. Kovolas*,
No. CRIM.A. 96-10265-WGY, 1998 WL 452218 (D. Mass. July 27, 1998)............................ 9

*United States v. McHugh*,
57 F.Supp.3d 95 (D. Mass. 2014)........................................................................................ 8, 9

*United States v. Regeneron Pharms., Inc.*,
No. CV 20-11217-FDS, 2023 WL 7016900 (D. Mass. Oct. 25, 2023).................................... 19

*United States v. Santos*,
553 U.S. 507 (2008) ..................................................................................................... 12

*United States v. Vest*,
639 F.Supp. 899 (D. Mass. 1986)............................................................................. 9, 10

*Valentine v. Wideopen W. Fin., LLC*,
No. 09 C 7653, 2013 WL 5423846 (N.D. Ill. Sep. 27, 2013) ............................................ 8

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (2024)................................................................................................ 5, 12

*Webb v. Injured Workers Pharmacy, LLC*,
No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sep. 12, 2023)..................................... 13, 18

*Webster v. Bradford-Scott Data, LLC*,
No. 1:24-CV-00117-HAB-SLC, 2025 WL 560917 (N.D. Ind. Feb. 20, 2025) ....................... 17

*Williams v. TMC Health,*
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sep. 30, 2024)....................... 9, 11

**Statutes**

18 U.S.C. § 2511(1)(a)....................................................................................................... 7

18 U.S.C. § 2511(2)(d) ...................................................................................................... 8

18 U.S.C. § 2511(4) ......................................................................................................... 12

18 U.S.C. § 2520(a) ....................................................................................................... 6, 7

42 U.S.C. § 1320d(6) ...................................................................................................... 10

Cal. Penal Code § 631(a) .................................................................................................. 7

Pub. L. No. 99-508, § 101(b)(2), 100 Stat. 1848, 1850 (1986) ........................................... 6

**Regulations**

45 C.F.R. § 160.103 ....................................................................................................... 10

Plaintiffs allege that Atrius Health, Inc. ("Atrius") violated the federal criminal Wiretap Act and state law by using common website analytics and advertising tools. This action is one of many in the Commonwealth and across the country that seek to impose liability for routine use of website technologies. Under Plaintiffs' theory of liability, every major healthcare provider in the Commonwealth, as well as numerous other entities, would be exposed to significant criminal and civil liability based on widely used website design and coding practices. Multiple other courts in this District have correctly rejected Plaintiffs' novel theory. This Court should do the same.

Plaintiffs' claims are fundamentally flawed and should be dismissed for several reasons. ***First***, Plaintiffs' Wiretap Act claim is deficient because (i) Atrius did not intercept, use, or disclose data associated with Plaintiffs' alleged visits to the Website, (ii) Atrius was a party to the communications and did not have a criminal or tortious motive when allegedly installing the website technologies, and (iii) Plaintiffs have not shown a crime or tort occurred separate from the alleged interception. ***Second***, Plaintiffs' invasion of privacy claim fails for multiple, independent reasons: (i) Atrius did not invade Plaintiffs' privacy; (ii) regardless, there was no invasion into a private space where Plaintiffs had a reasonable expectation of privacy; and (iii) any alleged invasion was not offensive. ***Third***, Plaintiffs' claim for breach of fiduciary duty and/or the common law duty of confidentiality fails because (i) there is no duty here; (ii) the allegations do not plausibly show that the data was "medical information" about the Plaintiffs that was sent to or discovered by a physician, and (iii) Plaintiffs do not allege cognizable damages. ***Fourth***, Plaintiffs' breach of implied contract claim should be dismissed because the allegations do not show (i) formation of a contract or (ii) cognizable damages. ***Fifth***, and finally, Plaintiffs' unjust enrichment claim fails because they fail to allege (i) the inadequacy of legal remedies and (ii) they conferred a measurable benefit for which they reasonably expected compensation.

Given these numerous deficiencies, as set out in more detail below, the Court should dismiss the Consolidated Amended Class Action Complaint ("CAC") with prejudice.

# I. BACKGROUND

## A. The Internet

Central to this case is the process for making a website appear on a visitor's browser or mobile app. *See* CAC ¶¶ 95-102. A user accesses a website by having their web browser send "GET request[s]" for information to the "server [hosting] the website." *Id.* ¶¶ 95, 98. That server then sends the requested information back to the user's web browser with instructions to generate a webpage. *Id.* ¶ 98. Those instructions direct an "assemblage of content from multiple servers hosted by [third] parties." *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016). Thus, although webpages "appear on browsers as integrated collages of text and images," the "content is delivered and aggregated from multiple independent servers." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 130 (3d Cir. 2015).

Third parties are involved at every stage of this process, including rendering fonts and images on a webpage, *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155-56 (9th Cir. 2007), displaying advertisements, *see In re Google*, 806 F.3d at 130, and determining whether a website visitor is a real person through CAPTCHA technology. Third parties also provide website analytics technologies, which are used across industries, nonprofits, and government. *See In re Nickelodeon*, 827 F.3d at 268; CAC ¶ 203. U.S. government agencies, for example, are required to implement Google Analytics technology to collect data across more than 5,000 government websites—including the websites of the U.S. Department of Health and Human Services (which

Plaintiffs cite) and the Veterans Health Administration.[1] The same is true of this Court's website, PACER, and the website of the Boston Tea Party Ships & Museum.[2]

Plaintiffs' CAC focuses on three such commonplace technologies: Google Analytics, DoubleClick, and the Meta Pixel ("Website Technologies"). *See* CAC ¶¶ 46, 68-71. Google Analytics and DoubleClick allegedly send information to Google LLC ("Google"), and the Meta Pixel allegedly sends information to Meta Platforms, Inc. ("Facebook") (collectively, "Technology Vendors"). *See id.* ¶¶ 36, 65. Atrius allegedly uses the Website Technologies to improve its Website analytics and internet advertising and marketing. *E.g.*, *id.* ¶¶ 4, 56, 68, 70, 72, 163, 165, 199, 206, 209, 297.

**B. Atrius and the Atrius Website**

Atrius is a non-profit medical group practice in Eastern Massachusetts. Atrius operates www.atriushealth.org (the "Website") that enables anyone, anywhere to obtain information about Atrius and access a patient portal provided by a third-party, Epic, which also provides a patient portal mobile application that Atrius patients can download. *See id.* ¶¶ 4, 11, 28, 31, 183.

Notably, Plaintiffs do not (and cannot) allege that the Website Technologies were deployed inside the patient portal to capture medical test results, doctor notes, and similar types of data. *See generally id.*[3] Instead, they allege that the Website Technologies simply logged whether a user

---

[1] *See* GSA, Digital Analytics Program, https://analytics.usa.gov/about (last visited Feb. 2, 2026); CAC ¶ 290 n. 93 (citing U.S. Dep't of Health & Hum. Servcs., *Marketing*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html); *see also* Cooke Decl. Ex. A, at 8-12 (Br. of Am. Hosp. Ass'n, et al. as Amici Curiae Supporting Defendant-Appellee, *Goulart v. Cape Cod Healthcare, Inc.*, No. 25-1672 (1st Cir. Jan. 20, 2026)).

[2] *See* U.S. Dist. Ct. for the Dist. of Mass., https://www.mad.uscourts.gov/ (last visited Feb. 2, 2026) (using Google Analytics); PACER, *Massachusetts District Court*, https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/MADC (last visited Feb. 2, 2026) (using Google Analytics); Boston Tea Party Ships & Museum, https://www.bostonteapartyship.com/ (last visited Feb. 2, 2026) (using Meta Pixel and Google Analytics).

[3] Plaintiffs assert in a footnote that discovery might reveal such technologies were deployed and active behind the patient portal, but that is pure unsupported speculation without any factual basis.

clicked to access the patient portal or clicked on the link to pay bills, which also took the user to the patient portal. *See id.* ¶¶ 9, 181-183, 191. There are no allegations that the "Bill Pay" function discloses details of a medical bill or what services the bill relates to.

As Plaintiffs observe, the Website contains links to both its Medical Information Privacy Notice and to its online privacy statement. *See id.* ¶¶ 2, 213, 218. The former states that Atrius is required by law to provide the Privacy Notice, which explains Atrius "may collect, use, and disclose health information as necessary to operate and manage our business activities related to providing and managing your health care. For example, we might analyze data to determine how we can improve our services." Cooke Decl. Ex. D, at 3 (Medical Information Privacy Notice).[4] The latter online privacy statement makes clear that Website is "intended to provide general information" about Atrius, "is not an attempt to practice medicine or provide specific medical advice," and "use of the [W]ebsite" does not "establish a doctor-patient relationship." Cooke Decl. Ex. F, at 1 (Web Privacy Statement as of Aug. 20, 2022). The online privacy statement was expanded in April 2023 to explicitly address the Website Technologies:

> The Company may use various technologies, including cookies, tokens, tags, web logs, web beacons, scripts, and web server logs to gather automatically collected information and may aggregate this information from visitors of our Online Services or to enable certain features of our Online Services. This information may include demographic data, technical information about the technology (e.g., phone, computer) you use to connect to the Online Services, web browser information, your IP address, and browsing behavior such as pages visited and how often they are visited (collectively, "Activity Information"). We may also use third-party analytics companies to provide these services.

Cooke Decl. Ex. G, at 7 (Online Services Privacy Policy dated Apr. 6, 2023).

[4] The previous version of the Privacy Notice cited by Plaintiffs included similar language, stating Atrius "can use and share your health information to run our practice, improve your care, and contact you when necessary." CAC ¶ 215, n.76; Cooke Decl. Ex. E, at 1 (Notice of Privacy Practices as of May 17, 2022).

### C. Plaintiffs and This Litigation

Across the 100-page CAC, the named Plaintiffs appear in just 10 paragraphs. *See* CAC ¶¶ 12-14, 17-20, 175, 178, 190. Jane Doe #1 simply alleges that she visited the patient portal, the "Find-a-Doctor" page, and pages about unspecified conditions and procedures. *See id.* ¶ 18. John Doe similarly asserts that he visited the Website and patient portal but does not allege where he entered purportedly "identifying information." *See id.* ¶ 19. No Plaintiff alleges facts showing that they considered any searches on the Website to be confidential. No Plaintiff alleges they sought prescription refills through the Website. And no Plaintiff alleges that they have a Google or Facebook account, or were logged into those accounts when they visited the Website.

### D. Massachusetts Web Privacy Litigation

This suit is one of more than a dozen similar putative class actions challenging use of website analytics and advertising technologies by Massachusetts hospitals, insurers, and medical providers. *See* Cooke Decl. Ex. H (chart of parallel cases). Plaintiffs in these cases first tried asserting claims under the Massachusetts wiretap statute, but the Supreme Judicial Court put an end to that in *Vita v. New England Baptist Hospital*, 494 Mass. 824 (2024), which held that the state statute applied to interception of human conversations, not web traffic data. Undeterred, Plaintiffs here—like the plaintiffs across these cases—amended their complaints to swap in claims under the federal Wiretap Act. *See* Dkt. No. 1, Ex. A.

Every court in this District that has ruled on parallel claims under the federal Wiretap Act has squarely rejected them.[5] As these courts have held, a complaint must be dismissed if it lacks

[5] *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025), *appeal filed*, No. 25-1672 (1st Cir. July 23, 2025); Cooke Decl. Ex. I, at 4-7 (*Vita v. Blue Cross & Blue Shield of Mass., Inc.*, No. 25-cv-10420, slip op. at 4-7 (D. Mass. Oct. 17, 2025)); *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025 (D. Mass. Sep. 29, 2025); *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and recommendation adopted in relevant part, rejected in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025).

detailed allegations about the plaintiffs' website activities and what data was collected and transmitted as a result of those activities. *See Blue Cross & Blue Shield*, No. 25-cv-10420, slip op. at 4-7. And courts have further held that healthcare entities using these tools to improve marketing and advertising cannot be held liable under the statute. *See Goulart*, 2025 WL 1745732, at *4; *McManus*, 2025 WL 2778025, at *3-4; *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13-14.

## II. STANDARD

To survive a motion to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007). This requires more than "naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Dismissal is appropriate if the complaint fails to set forth 'factual allegations,' . . . necessary to sustain recovery under some actionable legal theory." *McCabe v. Ford Motor Co.*, 774 F.Supp.3d 349, 366-67 (D. Mass. 2025) (Saylor, C.J.) (citation omitted).

## III. ARGUMENT

### A. Plaintiffs' Federal Wiretap Claim Fails as a Matter of Law

Passed in 1968, the federal Wiretap Act (the "Act" or "Wiretap Act") took its current form when it was amended by the Electronic Communications Privacy Act in 1986, several years before the advent of the internet. *See* Electronic Communications Privacy Act of 1986, Pub.L. No. 99-508, § 101(b)(2), 100 Stat. 1848, 1850 (1986). The Act is a criminal statute, but provides a civil cause of action against persons or entities that "***intercepted***, ***disclosed***, or ***intentionally used***" another's electronic communications "in violation of" the Act. 18 U.S.C. § 2520(a) (emphasis added). "Intercept" is defined as "the aural or other acquisition of the contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). To be liable for "intentional[] use[]" or "intentional[] disclos[ure]" of a communication, someone must (i) obtain contents of a communication that was previously intercepted ***and*** (ii) have actual

or constructive knowledge that the contents were intercepted. *See id.* § 2511(1)(c)-(d). There also is a critical limitation on liability under the statute:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication ***where such person is a party to the communication*** or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted ***for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d) (emphasis added). Plaintiffs' claim fails because (1) Atrius cannot be held liable as an aider or abettor and (2) the "crime-tort exception" to the one-party consent rule does not apply where, as here, there was (a) no intent to commit a crime or tort and (b) no separate and independent criminal or tortious act apart from the alleged interception.

1. The Act Does Not Impose Aiding-and-Abetting Liability on Atrius

Plaintiffs cannot show that Atrius is indirectly liable under the Wiretap Act for "caus[ing]" the "use[]" of and "permitting the interception" of communications by the Technology Vendors. *See* CAC ¶¶ 208, 282, 292(a), 302. The problem for Plaintiffs is that the "procurement" provision of the Act pertains only to ***criminal*** liability, ***not*** civil liability. *Compare* 18 U.S.C. § 2520(a) ("any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation"), *with* 18 U.S.C. § 2511(1)(a) ("any person who— (a) intentionally intercepts, endeavors to intercept, or ***procures*** any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished") (emphasis added). Section 2520(a) creates a private civil action only against individuals who engage in prohibited interceptions, disclosures, or uses; it does not permit private civil claims

against individuals who procure or aid and abet another's unlawful conduct.[6]

Based on this statutory language, courts hold that there is no indirect civil liability under the Wiretap Act. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1089 (N.D. Cal. 2015); *Valentine v. Wideopen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sep. 27, 2013). Indeed, "[w]hen 'a statute is precise about who . . . can be liable' courts should not implicitly read secondary liability into the statute." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (citation omitted). Because "there is no secondary civil liability under the Federal Wiretap Act," *Joiner v. NHL Enters., Inc.*, 2025 WL 2846431, at *7 n.6 (S.D.N.Y. Aug. 29, 2025), *R&R adopted in relevant part,* 2025 WL 3126106 (S.D.N.Y. Sep. 29, 2025), Plaintiffs' claim should be dismissed.

2. The Crime-Tort Exception to One-Party Consent Does Not Apply

To the extent Plaintiffs attempt to impose direct liability on Atrius, that fares no better because as Plaintiffs acknowledge, the one-party consent limitation under the Federal Wiretap Act applies here, and Atrius' alleged use of the Website Technologies shows that it consented to the alleged data transmissions. *See* CAC ¶ 285. Faced with this hurdle, Plaintiffs are forced to assert that Atrius acted for "the purpose of committing any criminal or tortious act," and thus falls within the "crime-tort" exception to party consent. *See, e.g.*, *id.* ¶¶ 284-85 (quoting 18 U.S.C. § 2511(2)(d)). The crime-tort exception is "to be construed narrowly," *United States v. McHugh*, 57 F.Supp.3d 95, 100 (D. Mass. 2014) (citation omitted), however, and Plaintiffs "must plead sufficient facts to support an inference that the offender intercepted the communication [1] for the purposes of a tortious or criminal act that is [2] independent of the intentional act of recording."

[6] Legislatures know how to extend aiding-and-abetting liability to civil claims under wiretap statutes. *See* Cal. Penal Code § 631(a) (extending liability under California's wiretap statute to "[a]ny person . . . who aids, agrees with, employs, or conspires with any person or persons to unlawfully" intercept another's communication). Congress made the decision not to do so for the Wiretap Act.

*In re Google*, 806 F.3d at 145. Plaintiffs fail to show that either requirement is met.

##### *a. Atrius' Motive Was Allegedly Commercial, Not Criminal or Tortious*

To establish tortious or criminal purpose, Plaintiffs must show "either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation, was to commit a criminal, tortious, or other injurious act." *United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993) (quoting *United States v. Vest*, 639 F.Supp. 899, 904 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987)). In other words, a defendant must have a "criminal or tortious purpose ***in mind***" at the time of the alleged violation. *United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (emphasis added); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("[T]he offender must have as her objective a tortious or criminal result."); *In re DoubleClick Privacy Litig.*, 154 F.Supp.2d 497, 515 (S.D.N.Y. 2001) (explaining that the exception "cover[s] only acts accompanied by a specific contemporary intention to commit a crime or tort"). An unlawful "purpose is" therefore "properly confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment." *McHugh*, 57 F.Supp.3d at 100 (citation omitted).

Applying the "primary motivation" or "determinative factor" standard, courts in this District have uniformly concluded allegations similar to those in the CAC are insufficient to show that Website Technologies were installed for "the purpose of committing any criminal or tortious act." *See Goulart*, 2025 WL 1745732, at *3; *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *17-18; *McManus*, 2025 WL 2778025, at *2-4.[7] *Goulart* is particularly instructive. There, the

---

[7] Courts outside this District have similarly rejected application of the crime-tort exception to these website technologies. *See, e.g.*, *Williams v. TMC Health,* 2024 WL 4364150, at *4 (D. Ariz. Sep. 30, 2024) (no criminal or tortious purpose where defendants used data to increase profits and improve website analytics); *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (similar). Other courts have

plaintiffs (represented by the same counsel as here) alleged that the defendant violated the Health Insurance Portability and Accountability Act ("HIPAA") by embedding the Meta Pixel and Google Analytics to "knowingly disclose information that allows Facebook, Google, and other advertisers to target patients with ads" and that the defendant "had been compensated by Facebook with enhanced online advertising services." *See Goulart*, 2025 WL 1745732, at *4 (citation modified). The court held that these allegations were not enough and only showed that the defendant was motivated by "commercial gain or convenience." *Id.* at *3.

The same reasoning applies here. No alleged facts show that Atrius' "primary motivation" or "determinative factor" in deploying the Website Technologies "was to commit" a "criminal" or "tortious" act. *Vest*, 639 F.Supp. at 904. Plaintiffs' repeated, conclusory assertion that Atrius had a "primary purpose of committing criminal or tortious acts," *see* CAC ¶¶ 7, 293, 296, 304-05, is a bare legal conclusion insufficient under "[t]he *Twombly-Iqbal* standard," *Goulart*, 2025 WL 1745732, at *3. Indeed, the CAC alleges the Website Technologies were installed for "advertising purposes" and to understand Website traffic, not to violate HIPAA or other laws. CAC ¶¶ 4, 68, 70-72, 163-65, 199, 206, 209, 297. As the *Goulart* court put it, "commercial purposes . . . are not the stuff of which a crime-tort is made." 2025 WL 1745732, at *4.

Moreover, the allegations in the CAC do not demonstrate that Atrius violated HIPAA in the first place. Congress has defined individually identifiable health information ("IIHI") as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

---

reached a contrary conclusion at the motion to dismiss phase, but those cases are factually distinguishable or fail to apply the controlling standard articulated above.

42 U.S.C. § 1320d(6); *see also* 45 C.F.R. § 160.103 (defining PHI as a subset of IIHI). Because anyone could visit the Atrius Website for any number of reasons, browsing activity may be "indicative" of a user's patient status, but is not categorically PHI. *Am. Hosp. Ass'n v. Becerra*, 738 F.Supp.3d 780, 8001-02 (N.D. Tex. 2024); *see also Williams*, 2024 WL 4364150, at *4 (HIPAA not necessarily implicated because a "Website cannot distinguish between who is a patient and who is not"). Plaintiffs' allegations about searching medical conditions and doctors as well as logging into the patient portal are therefore insufficient. *E.g.*, CAC ¶¶ 17-18. As courts have found, allegations regarding use of a medical provider's website "to schedule appointments, to find a podiatrist, and to access the patient portal" are not enough to implicate HIPAA. *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3-4 (S.D. Ind. Sep. 24, 2024) (citation modified); *see also Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1123 (S.D. Cal. 2023).[8]

*b. The Alleged Crimes and Torts are Not Separate from the Alleged Interceptions*

Plaintiffs also cannot establish the crime-tort exception because the CAC does not show any criminal or tortious act separate from the alleged interceptions. As numerous courts have held, the "tortious or criminal act" must be "***independent*** of the intentional act of recording." *In re Google*, 806 F.3d at 145 (citation omitted); *see also Caro*, 618 F.3d at 98, 101; *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). The *Goulart* and *Lawrence General* courts

[8] Tellingly, Plaintiffs cite no authority suggesting that the federal government has ***ever*** pursued criminal charges under HIPAA or the Act based on transmission of browsing data on healthcare websites. When the government has pursued criminal violations, the context is readily distinguishable from this case. *See United States v. Gabrielian*, 2024 WL 2384148, at *1 (D. Md. May 22, 2024) (describing prosecution of defendant for disclosure of U.S. government employee's information to Russian operative and noting that "as far as this Court is aware, this is the first case in which the Government has ever charged this particular felony violation of" HIPAA); *see also* Cooke Decl. Ex. B, at 23-26 (Br. of The Greater Bos. Chamber Of Com. as Amicus Curiae Supporting Defendant-Appellee, *Goulart v. Cape Cod Healthcare*, No. 25-1672 (1st Cir. Jan. 14, 2026)).

dismissed Wiretap Act claims for this reason. *Goulart*, 2025 WL 1745732, at *4 n.3; *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13-14. The plaintiffs in both cases failed to allege that "that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools." *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13-14. This case is no different. The alleged interceptions identified in the CAC are part and parcel of the purported violations of HIPAA and other laws. *See* CAC ¶¶ 295-99. Put another way, the supposed illegal conduct is the same as that which underlies Plaintiffs' claims: the purported use of the Website Technologies and their "instantaneous[]" and "simultaneous[]" transmission of "patients' communications with Defendant." *See id.* ¶¶ 169, 205.

In short, Plaintiffs offer no basis to expand the "narrow" crime-tort exception or to depart from the other courts in this District that have dismissed parallel claims under the Wiretap Act against other healthcare entities in Massachusetts. To the extent there is ambiguity in the Wiretap Act, because the Act is a criminal statute, *see* 18 U.S.C. § 2511(4), the rule of lenity requires resolving that ambiguity in Atrius' favor. *See United States v. Santos*, 553 U.S. 507, 514 (2008); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). That is what the Supreme Judicial Court did in *Vita*, 494 Mass. at 848-49, and that is what other courts interpreting wiretap statutes in the context of website privacy claims have done. *See Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (same for California's wiretap law). Any ambiguity also should be interpreted to avoid "absurd results," given that an "interpretation[] consistent with the legislative purpose" cuts against Plaintiffs' expansive reading of the Wiretap Act that would otherwise impose crushing liability across healthcare entities in the Commonwealth. *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024); Cooke Decl. Ex. B, at 6-14; Cooke Decl. Ex. C, at 13-18 (Br. of Ch. of Com. of the United States of Am. as Amicus Curiae Supporting Defendant-

Appellee, *Goulart v. Cape Cod Healthcare*, No. 25-1672 (1st Cir. Jan. 20, 2026)).

**B. Plaintiffs' Privacy Act Claim Should Be Dismissed**

Plaintiffs' state law claims also should be dismissed. Plaintiffs' Privacy Act claim fails because (1) Atrius did not invade Plaintiffs' privacy; (2) there was no invasion into a private space where Plaintiffs had a reasonable expectation of privacy; and (3) the allegations do not demonstrate an "unreasonable" and "serious" invasion of privacy. *Carmack v. Nat'l R.R. Passenger Corp.*, 486 F.Supp.2d 58, 80 (D. Mass. 2007).

1. Atrius Did Not Invade Plaintiffs' Privacy

The alleged intrusion here supposedly involved third parties like Facebook and Google acquiring data about Plaintiffs' alleged interactions with the Website. *E.g.*, CAC ¶¶ 3-5, 46, 68, 71, 209, 317. Plaintiffs voluntarily navigated to the Website, and it was instructions from third-party servers that directed visitors' browsers to allegedly transmit data to those third parties. *Id.* ¶¶ 79, 89, 101. Courts routinely dismiss invasion of privacy where, as here, there is no affirmative invasion by the defendant. *See Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *4-5 (D. Mass. Sep. 12, 2023); *Kurowski v. Rush Health Sys., Inc.*, 659 F.Supp.3d 391, 943-44 (N.D. Ill. Mar. 3, 2023); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024); *Okash v. Essentia Health*, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024).[9]

2. There Was No Invasion into a Private Space Where Plaintiff Had a Reasonable Expectation of Privacy

In addition, Plaintiffs fail to allege facts showing that they had a reasonable expectation of privacy associated with their Website activity. The alleged intrusion into their "expectation of

[9] The Privacy Act notably omits aiding and abetting liability, in contrast to other statutes that provide for such liability. *Cf.* Mass. G.L. ch. 151B § 4(5). Moreover, courts have rejected liability for ***attempted*** invasion of privacy precisely because the Privacy Act does not provide for inchoate offenses. *See French v. United Parcel Serv., Inc.*, 2 F.Supp.2d 128, 132 (D. Mass. 1998).

privacy," *Garrity v. John Hancock Mut. Life Ins. Co.*, 2002 WL 974676, at *1 (D. Mass. May 7, 2002), must involve disclosure of "facts of [a] highly personal or intimate nature." *Carmack*, 486 F.Supp.2d at 80 (citation omitted). The CAC falls well short on both fronts.

As numerous courts have held, people expect data about their web browsing to be collected. *See, e.g.*, *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) ("Most of us understand that what we do on the Internet is not completely private.") (citation omitted); *Hubbard v. Google*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data . . . ***and a reasonable user should expect as much***."); *Santoro v. Tower Health*, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024) ("These days, it is widely understood that when browsing websites, your behavior may be tracked, studied, shared, and monetized."). Plaintiffs cannot claim an expectation of privacy when they supposedly interacted with public parts of the Atrius Website, such as running searches for doctors or medical conditions.[10]

Plaintiffs' alleged interactions with the patient portal did not transmit to the Technology Vendors any "highly personal or intimate" facts either. At most, the CAC alleges that data about navigation ***to*** the patient portal may have been shared. CAC ¶¶ 9 ("pages used to navigate to Atrius Health's patient portal"), 33, 183. That, in turn, simply indicates the visitor ***may*** be a patient, *see supra* Section III.A.2.a (citing *Becerra*, 738 F.Supp.3d at 807), which is not actionable, *see T.D.*, 2024 WL 3972984, at *2 (collecting cases and holding that "[t]here is no intrusion . . . when a patient voluntarily provides . . . information to his or her healthcare provider").

[10] As the online privacy statement has consistently made clear, the Website was "intended to provide general information" about Atrius, was "not an attempt to practice medicine or provide specific medical advice," and "use of the [W]ebsite" did not "establish a doctor-patient relationship." *See* Cooke Decl. Ex. F, at 1 (previous version of online privacy statement, linked as Web Privacy Statement in CAC ¶ 213). The Online Services Privacy Policy in effect since April 2023 goes further, noting for visitors that Atrius "may also share Information with other third-party companies with which we have a business relationship or hire to perform services on our behalf." Cooke Decl. Ex. G, at 6.

3. Any Alleged Invasion Was Not Serious

For the same reasons, Plaintiffs also cannot show that any purported invasion was serious. First, the alleged disclosure of IP addresses and browsing history, CAC ¶¶ 21, 99, 155, 174, is not offensive because "this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 933 n.5 (N.D. Cal. 2015) (citation omitted). Nor do Plaintiffs' allegations establish that their private health information was disclosed. Beyond general browsing, Jane Doe #1 alleges only that she used the "Find a Doctor" feature to obtain information about physicians, CAC ¶ 175, without alleging that her searches related to her health. Likewise, Jane Doe #2 alleges she searched for "HPV" and "Cervical" on the Website but again does not specify that those queries were tied to her own medical condition. *Id.* ¶ 20. Lastly, there are no allegations that John Doe considered searches about "shoulder injuries," *id.* ¶ 19, to be private. All of these searches could have been performed by any number of visitors, including visitors who were not Atrius patients. Such activity is akin to walking into a doctor's office off the street, or perusing medicines in a pharmacy aisle, all of which are public and observable by others. *See Lawrence Gen. Hosp.*, 2025 WL 2808055, at *15; *T.D.*, 2024 WL 3972984, at *2; *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims because disclosure of "routine medical searches and inquiries" was not "highly offensive") (citation omitted); *Hubbard*, 2024 WL 3302066, at *7 (no offensive intrusion based on "ubiquitous, commercial behavior").[11]

Moreover, Atrius had a legitimate business purpose for using Website Technologies: to

[11] The court in *Doe v. Tenet Healthcare Corp.*, 731 F.Supp.3d 142 (D. Mass. 2024) denied a motion to dismiss where the plaintiffs alleged certain health information was disclosed to Facebook, but that court did not address whether the alleged web technologies served a "legitimate business purpose," as they do here, *see Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 N.E.2d 912, 915 (Mass. 1991) (no violation based on "legitimate business purpose"), and misapplied the applicable standard.

understand how users interacted with its Website and to market its services. CAC ¶¶ 4, 68, 70,72, 163, 165, 199, 209, 297; *see Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (legitimate business purpose undercuts invasion of privacy). This Court should "reject [P]laintiffs' interpretation [of Mass. G.L. c. 214, § 1B] because it would lead to illogical results," transforming the website architecture of numerous Massachusetts healthcare entities into violations of the Privacy Act. *Schlesinger*, 567 N.E.2d 912 at 914.

### C. The Breach of Fiduciary Duty / Common Law Duty of Confidentiality Claim Fails

Plaintiffs' claim for breach of a fiduciary duty of confidentiality is equally flawed and should be dismissed. The allegations in the CAC do not show that Atrius "owed" Plaintiffs a fiduciary duty in connection with their visits to the Website, any "breach" of such a duty, or that they suffered "injury" as a result. *Est. of Moulton v. Puopolo*, 467 Mass. 478, 493 (2014).

As an initial matter, regardless of whether Atrius owed a fiduciary duty to Plaintiffs with respect to medical treatment by its providers, that duty does not encompass Plaintiffs' alleged activities on the Website. Massachusetts courts have been clear that "the scope of the fiduciary duty a doctor owes a patient" does not include "conduct beyond the context of medical treatment." *Korper v. Weinstein*, 57 Mass. App. Ct. 433, 437-38, n.11 (2003). Put another way, the limits of the duty are "defined by the incidents and undertakings of the defendant as a physician." *Id.* Here, however, Plaintiffs do not and cannot allege that the Website Technologies directed Plaintiffs' browsers to transmit test results, doctor's notes, or similar medical treatment information to third parties. Instead, what Plaintiffs allegedly did on the Website—browsing through various pages, running searches, and accessing the patient portal—could have been done by anyone with internet access and is not substantive medical treatment data from Atrius providers. *See Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *5-6 (Mass. Super. Aug. 24, 2007) (dismissing claim where

pharmacist disclosed name, address, and data of birth but did not share substantive prescription information). Atrius expressly disclaimed any "doctor-patient" relationship based on such website activity. Cooke Decl. Ex. F, at 1. The case cited in the CAC, *Alberts v. Devine*, 479 N.E.2d 113, 120 (Mass. 1985), underscores why the claim here fails as a matter of law; *Alberts* turned on affirmative disclosure of "medical facts communicated to a physician or discovered by the physician through examination," which is what Plaintiffs have not and cannot allege here. *Id.* at 118.

Plaintiffs also have not shown any cognizable injury as a result of the alleged transmission of Website data to third parties. ***First***, courts reject loss of "value" allegations, *e.g.*, CAC ¶ 336, where, as here, Plaintiffs fail to allege facts showing that they tried to but can no longer use or monetize this data. *E.g.*, *Taylor v. UKG, Inc.*, 693 F.Supp.3d 87, 100-01 (D. Mass. 2023) (noting that courts consistently reject this theory of injury); *Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *8 (N.D. Ind. Feb. 20, 2025) (same). ***Second***, vague assertions about loss of "interest in privacy" do not help Plaintiffs, as explained in § III.B.2-3, *supra*. There is no "free-roaming privacy right" when browsing websites, *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025), and Plaintiffs do not allege facts showing they suffered harm from the alleged transmission of data about their Website activities. *E.g.*, *T.D.*, 2024 WL 3972984, at *3 (finding that even receipt of targeted ads did not show cognizable privacy harm). ***Third***, Plaintiffs' claim that they "did not get the full value of the medical services for which they paid" is nonsensical. Courts routinely reject benefit-of-the-bargain damages in cases like this one where there are no allegations showing that Plaintiffs never received the medical services they (or their insurer) paid for or that the payments were connected to configuration of Atrius' Website, which provided "general information" to visitors. *See* Cooke Decl. Ex. F, at 1; *M.C. v. E. Side Health Dist.*, 2025

WL 435992, at *4 (S.D. Ill. Feb. 7, 2025) (rejecting benefit of the bargain theory when provision of healthcare was not impacted by the conduct at issue); *Attias v. CareFirst, Inc.*, 365 F.Supp.3d 1, 12-13 (D.D.C. 2019) (same). ***Fourth***, Plaintiffs cannot show injury based on purported benefits Atrius received, and their unjust enrichment theory fails for the reasons set forth in § III.E, *infra*.

### D. The Breach of Implied Contract Claim Is Fatally Flawed

Plaintiffs' breach of implied contract claim should be dismissed because they have not alleged facts showing that (1) there was mutual assent and consideration to support formation of a contract, and (2) they suffered cognizable damages as a result of the alleged breach. *See Katz v. Pershing, LLC*, 806 F.Supp.2d 452 (D. Mass. 2011), *aff'd*, 672 F.3d 64 (1st Cir. 2012).

No Contract Formed. Plaintiffs try to gin up an implied contract in two ways. First, they point to provision of "their PII/PHI in exchange for the medical treatment and other benefits provided by Atrius." CAC ¶ 345. But again, there are no allegations plausibly showing that information held by Atrius about Plaintiffs—such as their names and addresses or test results—was transmitted to a third party. The only data Plaintiffs assert was transmitted is browsing data that could have been associated with any visitor to the Website. Additionally, there are no factual allegations showing that Atrius assented to protect such browsing data. *See Webb*, 2023 WL 5938606, at *3 (finding plaintiff's good faith belief that their private information would be protected as insufficient because there was "no allegation that [defendant] agreed – explicitly or implicitly – to provide such protection").

Second, Plaintiffs allege that implied contractual terms were "embodied" in Atrius' Notice of Privacy Practices ("NOPP"). *Id.* ¶ 357. That misses the mark too. NOPPs are mandated by HIPAA, *see Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504, at *5 (S.D. Ohio Jan. 26, 2023), and nothing shows there was a meeting of the minds between Plaintiffs and Atrius about what happens to analytics data regarding Website visitors' browsing activity. As noted above, the

web privacy statement explained that the Website was "not an attempt to practice medicine or provide specific medical advice." Cooke Decl. Ex. F, at 1. And for "answers to personal questions," visitors were directed to "consult with a qualified health care provider." *Id.*; *see Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (affirming dismissal of implied contract claim for a "failure to reach agreement on the basic terms of the contract"). Numerous courts have rejected contractual claims predicated on NOPPs. *E.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1092 (W.D. Wash. 2024) ("[P]rivacy notices serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, [and so] are not contractual in nature"); *J.R. v. Walgreens Boots All., Inc.*, 470 F.Supp.3d 534, 559 (D.S.C. 2020) ("[NOPPs] cannot create contractual obligations because entities like [defendant] are required by law to comply with HIPAA without receiving consideration from plaintiffs."). And Plaintiffs' claim is even weaker here where they do not allege they ever saw or read the NOPP.

No Damages. For the same reasons that Plaintiffs have not shown actionable harm for their breach of fiduciary duty of confidentiality claim, they have not shown cognizable damages to state a claim for breach of implied contract. *See supra* § III.C; *see also Reidy v. UMass Mem'l Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (dismissing breach of contract claim based on failure to adequately plead damages); *T.D.*, 2024 WL 3972984, at *3 (similar).

### E. Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claim also fails out of the gate. As a threshold matter, Plaintiffs cannot seek unjust enrichment unless they show they lack adequate remedies at law. *Tedeschi-Freij v. Percy L. Grp.*, 99 Mass. App. Ct. 772, 780 (2021). While Plaintiffs attempt to plead unjust enrichment in the alternative, CAC ¶ 373, they do not allege facts showing that the legal remedies they seek, including a claim for statutory damages under the Wiretap Act, are

inadequate. That is dispositive, and Plaintiffs' claim should be dismissed. *See United States v. Regeneron Pharms., Inc.*, 2023 WL 7016900, at *15 (D. Mass. Oct. 25, 2023) (Saylor, C.J.) (dismissing unjust enrichment where legal claims asserted even though not viable as pled); *Flores v. OneWest Bank, F.S.B.*, 172 F.Supp.3d 391 (D. Mass. 2016), *aff'd*, 886 F.3d 160 (1st Cir. 2018).

Nor have Plaintiffs alleged facts to satisfy the elements of their claim. "To succeed on an unjust enrichment claim, a plaintiff must establish that (1) it 'conferred a measurable benefit' on the defendant, (2) it 'reasonably expected compensation,' and (3) 'the defendant accepted the benefit with knowledge' of that reasonable expectation." *Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*, 496 Mass. 197, 200 (2025) (citation omitted). No allegations plausibly show that Plaintiffs conferred a measurable benefit on Atrius for which they reasonably expected compensation. *See ARK Nat'l Holdings LLC v. We Campaign LLC*, 2021 WL 5918682, at *5 n.2 (D. Mass. Dec. 15, 2021) (dismissing unjust enrichment claim where plaintiff failed to show they "expected compensation in return"). In particular, nothing in the CAC suggests Plaintiffs expected compensation for data about what Website pages they visited or what searches they ran. On the contrary, Plaintiffs claim they were unaware of any such alleged data practices. *E.g.*, CAC ¶ 376. And as courts have emphasized, "it simply is not reasonable for a consumer . . . to use the internet without charge and expect compensation because a provider of online services has monetized that usage." *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014); *see also Tyler v. Michaels Stores, Inc.*, 840 F.Supp.2d 438, 451 (D. Mass. 2012) (no allegations showing a person would expect payment for PII).

## IV. CONCLUSION

For the foregoing reasons, Atrius respectfully requests that Plaintiffs' suit be dismissed with prejudice because Plaintiffs have had multiple opportunities over several years to plead their claims. *See Thomas v. Spaulding*, 2021 WL 3516474, at *4 (D. Mass. Aug. 10, 2021).

Dated: February 2, 2026

Respectfully submitted,

By: */s/ Adam A. Cooke*

Anthony E. Fuller (BBO #633246)
Kayla H. Ghantous (BBO # 709197)
Rachel E. Record (BBO # 713579)
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA 02110
(617) 371-1000
anthony.fuller@hoganlovells.com
kayla.ghantous@hoganlovells.com
rachel.record@hoganlovells.com

Allison Holt Ryan (*admitted pro hac vice*)
Adam A. Cooke (BBO # 679637)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
allison.holt-ryan@hoganlovells.com
adam.a.cooke@hoganlovells.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2026, copies of the foregoing Defendant's Motion to Dismiss were served via electronic filing through the Court's ECF system to:

Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO# 549049)
Patrick J. Vallely (BBO# 663866)
**Shapiro Haber & Urmy LLP**
One Boston Place, Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com
*Attorneys for Jane Doe #1 and the Putative Classes*

J. Tucker Merrigan, BBO# 681627
Thomas T. Merrigan, BBO# 343480
Ryan Hawkins, BBO# 686289
Erin E. McHugh, BBO# 703701
**Sweeney Merrigan Law**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com
tom@sweeneymerrigan.com
rmh@sweeneymerrigan.com
emchugh@sweeneymerrigan.com

Foster C. Johnson (*pro hac vice forthcoming)*
David Warden (*pro hac vice forthcoming)*
Justin C. Kenney *(pro hac vice forthcoming)*
Nathan Campbell (*pro hac vice forthcoming)*
**Ahmad, Zavitsanos, & Mensing, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
fjohnson@azalaw.com
dwarden@azalaw.com
jkenney@azalaw.com
ncampbell@azalaw.com

Warren Postman (*pro hac vice forthcoming)*

Alex Dravillas (*pro hac vice forthcoming)*
**Keller Postman LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, Illinois 60606
(312) 741-5220
wpd@kellerpostman.com
adj@kellerpostman.com
*Attorneys for John Doe, Jane Doe #2, and the Putative Classes*

*Counsel for Plaintiffs and the Proposed Class*

*/s/ Adam A. Cooke*
Adam A. Cooke

*Counsel for Defendant*