**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JOHN DOE, JANE DOE #1, JANE DOE #2,
For themselves and the Proposed Class,

Plaintiffs,

v.

ATRIUS HEALTH, INC.,

Defendant.

Case No. 1:25-cv-10020-FDS

# DEFENDANT'S REPLY IN SUPPORT OF THE MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs' Federal Wiretap Act Claim Fails .......... 1

1. Atrius Cannot Be Held Liable Under the Wiretap Act .......... 1

2. Plaintiffs Have Not Pled a Plausible Criminal or Tortious Purpose for the Wiretap Act's Crime-Tort Exception to Apply .......... 2

3. Plaintiffs Have Not Sufficiently Pled a Criminal or Tortious Act Separate and Independent of an Alleged Interception .......... 6

B. Plaintiffs' State Law Claims Fail .......... 7

1. Plaintiffs' Massachusetts Right to Privacy Act Claim Fails .......... 8

2. The Breach of Fiduciary Duty / Duty of Confidentiality Claim Fails .......... 10

3. Plaintiffs' Breach of Implied Contract Claim Fails .......... 12

4. Plaintiffs' Unjust Enrichment Claim Fails .......... 13

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)....11, 13

*Alberts v. Devine*,
395 Mass. 59 (1985) ....10

*Alves v. BJ's Wholesale Club, Inc.*,
2023 WL 4456956 (Mass. Super. Ct. June 21, 2023)....9

*American Hospital Ass'n v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. 2024) ....4

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024)....7

*Byrd v. Aaron's*,
14 F.Supp.3d 667 (W.D. Pa. 2014)....2

*Caine v. Sturdy Mem'l Hosp., Inc.*,
No. 25-CV-10261-ADB, 2026 WL 673483 (D. Mass. Mar. 10, 2026)....3, 6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....3

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F.Supp.3d 369 (S.D.N.Y. 2024)....5

*Dawson v. Univ. of Phoenix, Inc.*,
No. 1:25-CV-03497, 2026 WL 92248 (N.D. Ill. Jan. 13, 2026)....2

*Doe I v. Google, LLC*,
741 F.Supp.3d 828 (N.D. Cal. 2024) ....6

*Doe v. Baystate Health Sys., Inc.*,
No. 1:25-CV-10337-JEK, 2026 WL 776861 (D. Mass. Mar. 19, 2026) ....6, 8

*Doe v. Boston Med. Ctr. Corp.*,
No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Ct. Sep. 14, 2023)....8

*Doe v. Emerson Hosp.*,
No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Ct. Nov. 22, 2023)....8, 11, 12, 13

*Doe v. Lawrence Gen. Hosp.*,
No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025)......................3, 5, 6, 9

*Doe v. Tenet Healthcare Corp.*,
731 F.Supp.3d 142 (D. Mass. 2024) ..........................................................8, 9, 12, 13

*In re DoubleClick Privacy Litig.*,
154 F.Supp.2d 497 (S.D.N.Y. 2001).......................................................................3

*Frith v. Whole Foods Mkt., Inc.*,
38 F.4th 263 (1st Cir. 2022)...................................................................................7

*In re Google, Inc. Priv. Policy Litig.*,
58 F.Supp.3d 968 (N.D. Cal. 2014) .......................................................................9

*Goulart v. Cape Cod Healthcare, Inc.*,
No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) ...............................4, 6

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)..................................5

*Kelley v. CVS Pharmacy, Inc.*,
No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Ct. Aug. 27, 2007)................11

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ..............................................5

*Lewis v. Collective Brands, Inc.*,
No. CIV.A. 13-12702-GAO, 2014 WL 4924413 (D. Mass. Sep. 29, 2014) ..........................13

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .................................................................................2

*McManus v. Tufts Med. Ctr., Inc.*,
No. 25-CV-10008-ADB, 2025 WL 2778025 (D. Mass. Sep. 29, 2025) ..............................4, 6

*Moulton v. Puopolo*,
467 Mass. 478 (2014) .........................................................................................12

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)...................................................................................2

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025).................................6

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .................................................................................2

*Popa v. Harriet Carter Gifts, Inc.*,
426 F.Supp.3d 108 (W.D. Pa. 2019)....................9

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ....................2

*Progin v. UMass Mem'l Med. Ctr.*,
No. 25-CV-40003-ADB, 2026 WL 632770 (D. Mass. Mar. 6, 2026)....................3, 4, 6

*R.S. v. Prime Healthcare Servs. Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ....................5

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025)....................6

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2026 WL 252570 (C.D. Cal. Jan. 30, 2026)....................9, 10

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)....................13

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F.Supp.3d 152 (D. Mass. 2024) ....................10

*States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ....................2

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................5

*Tomasella v. Nestlé USA, Inc.*,
962 F.3d 60 (1st Cir. 2020)....................13

*United States v. Kovolas*,
No. CRIM.A. 96-10265-WGY, 1998 WL 452218 (D. Mass. July 27, 1998) ....................7

*United States v. McHugh*,
No. CRIM.A. 12-10184-NMG, 2014 WL 3798834 (D. Mass. July 29, 2014)....................3

*United States v. McHugh*,
57 F.Supp.3d 95 (D. Mass. 2014) ....................3

*United States v. Rodriguez*,
968 F.2d 130 (2d Cir. 1991)....................2, 9

*Webb v. Injured Workers Pharmacy, LLC*,
No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sep. 11, 2023) ....................12

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sep. 30, 2024) ............................6

*Willitts v. Engie N. Am. Inc.*,
No. 20-CV-11255-ADB, 2021 WL 2322833 (D. Mass. June 7, 2021) ..................................11

**Statutes**

18 U.S.C. § 2511(1)(d) .........................................................................................................7

**Other Authorities**

45 C.F.R. § 164.501(2)(ii)(B) ...............................................................................................7

## I. INTRODUCTION

Plaintiffs' Opposition to Atrius Health, Inc.'s ("Atrius") Motion to Dismiss tries to salvage their claims by citing decisions from outside the First Circuit, reinterpreting the allegations in the Consolidated Amended Class Action Complaint ("CAC"), and downplaying their theory of liability. That strategy is not surprising. First Circuit case law demonstrates that Plaintiffs' Wiretap Act and state law claims are fundamentally flawed and should be dismissed. The actual allegations in the CAC also do not show that medical data within the patient portal was transmitted to third parties or otherwise support Plaintiffs' claims. And Plaintiffs cannot sidestep the reality that their theories, if accepted, would expose a range of organizations in the Commonwealth and nationwide to potential crushing criminal and civil liability. For all these reasons, as set forth below and in Atrius' Motion, Plaintiffs' claims should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Federal Wiretap Act Claim Fails

Plaintiffs' Opposition attempts to recast the allegations in the CAC and twist the law to invoke the crime-tort exception and make out a viable Wiretap Act claim. But Plaintiffs cannot escape the reality that the CAC still lacks allegations plausibly showing that Atrius intercepted their communications, that its primary purpose in using the Website Technologies[1] was criminal or tortious, or that such acts were separate and independent from the alleged disclosures.

#### 1. <u>Atrius Cannot Be Held Liable Under the Wiretap Act</u>

Plaintiffs begin by effectively abandoning aiding-and-abetting liability[2] and instead arguing that Atrius intercepted Plaintiffs' communications. Opp. 5-6. Plaintiffs' theory is that by

[1] Terms not defined herein have the same meaning set forth in Atrius' Motion.
[2] Plaintiffs argue in passing that "there is civil liability for parties who procure an interception by a third party," but they do not cite any allegations in the CAC to support such a theory. Opp. 5. The Court should

allegedly "configuring" its Website and the Website Technologies to supposedly "redirect" communications, Atrius is "liable as a principle." *Id.* Plaintiffs' theory is at odds with the CAC, how websites actually function, and what "intercept" means under the Wiretap Act. As Atrius explained in its Motion, *see* Mot. 2, 13, the CAC alleges Atrius "deployed" the Website Technologies and that it was this third-party code—***not*** Atrius—that directed visitors' browsers to connect with third-party servers and transmit data to those servers. *See* CAC ¶¶ 82, 85, 89, 95-99. That is how webpages on the internet are delivered and rendered. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016) (explaining the operation of third-party servers). Thus, Plaintiffs' "redirection" theory, if accepted, would also mean that anyone operating a website or forwarding an email could be criminally and civilly liable under the Wiretap Act.[3] *See infra* § II.A.3. Plaintiffs do not cite any authority showing that Congress intended as much.[4]

2. Plaintiffs Have Not Pled a Plausible Criminal or Tortious Purpose for the Wiretap Act's Crime-Tort Exception to Apply

Plaintiffs do not dispute that the "primary motivation" or "determinative factor" test applies to the crime-tort exception. Opp. 11. Under this test, and consistent with Judge Burroughs' recent

not credit this conclusory argument. As the lone case Plaintiffs cite in a footnote acknowledges, multiple courts have rejected a procurement theory of liability under the statute. *See id.* at 5 n.2 (citing *Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at *12-17 (N.D. Ill. Jan. 13, 2026)). So should this Court.

[3] None of the out-of-Circuit cases Plaintiffs cite support their theory that redirection equals prohibited interception. *See* Opp. 5, 5 n.3. *United States v. Rodriguez*, 968 F.2d 130, 133-36 (2d Cir. 1991) addressed the location of a phone wiretap, and it never established a rule about redirection, especially in the context of the internet. *Noel v. Hall*, 568 F.3d 743, 749-51 (9th Cir. 2009) undercuts Plaintiffs' position by explaining that no violation of the statute occurs when disseminating a captured communication (in that case, audio recordings of phone calls) acquired lawfully. In addition, none of the defendants in *Luis*, *Szymuszkiewicz*, *Popa*, and *Byrd* were parties to the communications at issue, which is distinct from individuals visiting the Atrius Website. *See Luis v. Zang*, 833 F.3d 619, 624 (6th Cir. 2016); *States v. Szymuszkiewicz*, 622 F.3d 701, 703 (7th Cir. 2010); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 127 (3d Cir. 2022); *Byrd v. Aaron's*, 14 F.Supp.3d 667, 677-78 (W.D. Pa. 2014).

[4] Plaintiffs argue that "not all website operators are HIPAA covered entities" to downplay the consequences of their sweeping Wiretap Act interpretation. Opp. 17. However, that ignores the reality that plaintiffs have sued more than a dozen healthcare organizations, Mot., Ex. H, and even limiting the consequences to just one healthcare system, UMass Memorial Healthcare, potential liability is in the billions. *Id.*, Ex. B, at 14.

decisions in *Caine* and *Progin*, there is a "heightened intent" requirement where "[i]t is not enough to allege that [Atrius] knowingly committed" certain acts. *See Progin v. UMass Mem'l Med. Ctr.*, 2026 WL 632770, at *4 (D. Mass. Mar. 6, 2026). Rather, Plaintiffs must allege facts showing that the acts were done for criminal and tortious purposes—i.e., that Atrius "intend[ed] to harm the recorded party[.]" *United States v. McHugh*, 57 F.Supp.3d 95, 99-100 (D. Mass. 2014). As Atrius showed in its Motion, the CAC's conclusory allegations fall well short of demonstrating that Atrius "intended to harm" Plaintiffs by using commonplace Website Technologies on the Website. *See* Mot. 9-11.

Plaintiffs' contrary argument—that the act of using the Website Technologies is sufficient to establish "primary purpose"—misinterprets the statutory language. Opp. 6-7. To hold that simply "commit[ting] a wrongful act in addition to the wiretap violation" is sufficient for the "purpose element," *id.* at 6, reads "purpose" out of the statute and renders it "meaningless."[5] *United States v. McHugh*, 2014 WL 3798834, at *5 (D. Mass. July 29, 2014); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (explaining why Congress chose not to define "tortious intent" by the "act of recording itself"); *In re DoubleClick Privacy Litig.*, 154 F.Supp.2d 497, 515 (S.D.N.Y. 2001) (legislative history supports *mens rea* requirement for "purpose"). To satisfy the purpose requirement, there must be allegations plausibly showing that Atrius "consciously desire[d]" to violate HIPAA and state law by sharing confidential patient information with the Technology Providers. *Lawrence*, 2025 WL 2808055, at *10 (citation omitted); *see also Caro*, 618 F.3d at 100 (requiring a deliberate desire to harm); *Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL

---

[5] Moreover, as the *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *16 n.11 (D. Mass. Aug. 29, 2025), *report and rec'd adopted in relevant part, rejected in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025) court observed, "HIPAA does not provide for a private right of action," and "if the 'purpose' element of [the Wiretap Act] could be satisfied merely by showing that a website operator knowingly used web tools that share information with Google or Meta, then [the Wiretap Act] would provide just such a private right of action based on nothing beyond the mere 'knowingly' requirement for the HIPAA misdemeanor."

673483, at *3-4 (D. Mass. Mar. 10, 2026); *Progin*, 2026 WL 632770, at *4-5; *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025); *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, *3 (D. Mass. Sep. 29, 2025).

In an effort to meet this high bar, Plaintiffs argue that Atrius knew Google and/or Facebook "warned it not to use the [alleged] tracking technologies," "knew the privacy implications of deploying the [alleged] tracking technologies," controlled the Website Technologies, and had the "primary purpose" of "us[ing] the intercepted communications for targeted internet ads[.]" Opp. 7-8. These assertions miss the mark.

The CAC is devoid of allegations showing that Atrius saw or was aware of the supposed "warnings" from Meta and Google. None of the named Plaintiffs allege they had or have a Facebook/Meta account or a Google account. Nor does the CAC plead that a single named Plaintiff received any targeted ads tied to their visits to the Atrius Website. That omission is telling because Plaintiffs claim that Atrius leveraged advertising platforms to purportedly serve targeted ads. *E.g.*, CAC ¶¶ 5, 8. Plaintiffs are also wrong that use of the Website Technologies "reveal[ed] patient status" and necessarily violated HIPAA. Opp. 9. *American Hospital Ass'n v. Becerra* holds just the opposite: browsing activity on the public webpages of a medical provider "*does not* and *cannot* identify an individual or the individual's PHI" because the website owner, like Atrius, does not know the "intent" of the visitor, who might be navigating the website for a friend or family member, or for some other person or purpose.[6] 738 F.Supp.3d 780, 802 (N.D. Tex. 2024) (citation modified). That is equally true here, where no facts alleged in the CAC show that Atrius knew it was a particular individual interacting with the Website for reasons connected to that person's

[6] Plaintiffs try to distinguish *Becerra* on the basis that they did not mention the HHS guidance and "Proscribed Combination" of data addressed in the decision. But that is a distinction without a difference, as *Becerra* squarely addressed whether interactions with public-facing parts of a healthcare website constitute PHI—the exact issue Plaintiffs raise here. *E.g.*, CAC ¶¶ 21, 38, 101, 114, 121, 122, 152, 157.

health. It is no surprise, therefore, that the government has yet to charge a single Wiretap Act or HIPAA felony based on use of the Website Technologies on healthcare websites. *See* Mot. 11.

The allegations about visitors navigating to the patient portal provided by third-party Epic, "appointment request pages," and "bill payment pages," Opp. 10, do not help Plaintiffs. The appointment and bill pay pages simply route the visitor to the patient portal. CAC ¶ 32. And for the patient portal, the named Plaintiffs never allege that they ran searches for doctors and medical conditions at the same time that they navigated to the portal. Even if they had, that at most suggests the visitor ***may*** be a patient. As the *Lawrence* court explained, an "inference" that someone is a patient is "attenuated" because "individuals or bots who are not patients may click on the button as well, website visitors may pay bills for family members and others in their care, people may click on the link by mistake, and so forth." 2025 WL 2808055, at *15 n.10. Moreover, there are ***no*** facts alleged in the CAC showing that the "medical records" Plaintiff Jane Doe #1 or any other putative class members supposedly reviewed via the patient portal, including "office visit summary notes and test results," CAC ¶ 17, were transmitted to third parties, which distinguishes numerous cases that Plaintiffs cite.[7]

Plaintiffs also are wrong in attacking "financial" motives for using the Website Technologies. Opp. 11-13. Whether commercial motives can coexist with an intent to commit a crime or tort is irrelevant; what Plaintiffs have failed to show is that Atrius "consciously desire[d]" to violate HIPAA and state law by sharing confidential patient data with the Technology Vendors.

For all these reasons, the Court should join numerous other courts in rejecting attempts to

---

[7] *E.g.*, *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 381 (S.D.N.Y. 2024) (allegations related to patient portal and alleged capture of medical-treatment data), *Kurowski v. Rush Sys. for Health,* 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023) (same); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *1-2 (N.D. Ill. Feb. 21, 2025) (same); *R.S. v. Prime Healthcare Servs. Inc.*, 2025 WL 103488, at *1 (C.D. Cal. Jan. 13, 2025) (same); *Kane v. Univ. of Rochester,* 2024 WL 1178340, at *5, *14 (W.D.N.Y. Mar. 19, 2024) (same).

establish the "purpose" element of the crime-tort exception based on similar allegations.[8]

3. Plaintiffs Have Not Sufficiently Pled a Criminal or Tortious Act Separate and Independent of an Alleged Interception

Plaintiffs agree that for the crime-tort exception to apply, any alleged interception also must be "separate and independent" from the allegedly criminal or tortious conduct. Opp. 14. Plaintiffs point to Atrius' alleged disclosure of information to third parties and Atrius' purported subsequent "criminal and tortious use" of the data for "marketing purposes." *Id.* at 14-16. Neither suffices.

***Disclosure***. As to disclosure, Plaintiffs' attempt to draw a distinction between acquisition and disclosure is baseless for the simple reason that the CAC alleges these actions happen "contemporaneously," *e.g.*, CAC ¶ 193, which, as *Lawrence* and *Goulart* held, makes them insufficiently separate, *see* 2025 WL 2808055, at *13 ("The Complaint here alleges that Plaintiff's communications were 'contemporaneously intercepted, recorded, and transmitted to these third parties.' . . . In other words, the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation.") (citation omitted); 2025 WL 1745732, at *4 n.3 (similar). Plaintiffs' interpretation conflates the allegedly tortious purpose (disclosure to third parties without consent) with the alleged interception itself. The Court should reject that interpretation, which would mean that any time an intended party receives a communication and records it (e.g., by receiving an email), the receiving party might then violate

[8] *E.g.*, *Caine*, 2026 WL 673483, at *3-4; *Progin*, 2026 WL 632770, at *4-5; *Goulart*, 2025 WL 1745732, at *4; *McManus*, 2025 WL 2778025, at *3; *Lawrence*, 2025 WL 2808055, at *10-12, *14-18; *see also Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim that did not plausibly allege "purpose for sharing IIHI was to breach HIPAA"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (same); *Williams v. TMC Health*, 2024 WL 4364150, at *4-5 (D. Ariz. Sep. 30, 2024) (same); *Doe I v. Google, LLC*, 741 F.Supp.3d 828, 843 n.4 (N.D. Cal. 2024) (same). Since the Motion was filed, one court has concluded that plaintiffs adequately pled purpose to commit a tortious act—a Privacy Act violation—but as explained *infra*, no such violation was adequately pled here, making that case inapposite. *See Doe v. Baystate Health Sys., Inc.*, 2026 WL 776861, *4 (D. Mass. Mar. 19, 2026). *Baystate* also is a clear outlier, as six other courts in this District have granted motions to dismiss based on similar allegations.

the Wiretap Act based on what happens to the communication. *See United States v. Kovolas*, 1998 WL 452218, at *12 (D. Mass. July 27, 1998) (rejecting interpretation that would render the provisions of section 2511(2)(d) "meaningless" by defining as tortious "the very act of recording that Congress sought to permit"); *see also Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (courts should avoid statutory interpretations that produce absurd results).

***Subsequent Use***. As to the alleged subsequent use for marketing purposes, Plaintiffs' argument presumes that a healthcare provider intends to violate HIPAA if it uses PHI for marketing without specific patient authorization. Opp. 15-16. As explained above and in Atrius' Motion, however, public website browsing data generally does not constitute PHI. Mot. 10-11. But even if it did, a HIPAA-covered entity communicating about its own products or services is not engaged in "marketing" as HIPAA regulations define the term. *E.g.*, 45 C.F.R. § 164.501(2)(ii)(B) (defining "Marketing" to exclude any communication made "[t]o describe a health-related product or service . . . that is provided by . . . the covered entity making the communication"). The CAC also does ***not*** allege facts showing Atrius obtained the "contents" of allegedly intercepted communications from Google or Meta to allegedly assist with its marketing efforts. 18 U.S.C. § 2511(1)(d). And the CAC contains ***no*** allegation that any named Plaintiff saw an ad, targeted or otherwise. Such threadbare allegations fail as a matter of law. *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022).

### B. Plaintiffs' State Law Claims Fail

Plaintiffs cannot save their state law causes of action either. For each of these claims, Plaintiffs point to a handful of other Massachusetts cases to argue that courts have green-lighted their theories of liability. That grossly misreads these cases. *Vita v. New England Baptist Hospital* never found their claims to be "cognizable." *See* Opp. 18 n.16, 21, 23. *Vita* merely suggested that a misrepresentation claim under the consumer protection statute, Mass. G.L. c. 93A, ***may be***

"cognizable." 494 Mass. 824, 850 (2024). The court did not examine unjust enrichment, breach of fiduciary duty, implied contract, or a Privacy Act claim. Likewise, the *Doe v. Emerson Hospital*, 2023 WL 8869624, at *1, *3 (Mass. Super. Ct. Nov. 22, 2023), *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, at *1-2 (Mass. Super. Ct. Sep. 14, 2023), and *Doe v. Tenet Healthcare Corp.*, 731 F.Supp.3d 142, 147-48 (D. Mass. 2024) cases all involved allegations about medical "treatment," "bill payment," and "appointment" data being transmitted to third parties, which is not plausibly alleged in the CAC.[9] Contrary to Plaintiffs' argument, these cases do not concern "the same conduct," Opp. 18, as Plaintiffs here do not allege facts showing that they were subject to targeted advertisements following their use of the Atrius Website, nor that their medical treatment details, lab results, medical records, bill payment, Facebook IDs, or appointment details were transmitted.

1. Plaintiffs' Massachusetts Right to Privacy Act Claim Fails

Plaintiffs argue for the first time in their Opposition that their Privacy Act claim should be bifurcated into a disclosure claim and an intrusion claim. Opp. 18. But regardless of how the claim is styled, the claim remains an intentional tort predicated on either "dissemination" of "private" data or an "intrusion" into another person's seclusion that is serious. *Tenet*, 731 F.Supp.3d at 151. That is why courts routinely dismiss such claims where, as here, there is no affirmative invasion ***by the defendant***. *See* Mot. 13. The cases Plaintiffs cite in response never address this specific element of the claim and do not hold that the statute authorizes aiding and abetting liability. That would be contrary to the Privacy Act, which as Atrius noted in its Motion and Plaintiffs ignore,

[9] Plaintiffs also cite *Doe v. Partners Healthcare*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020), but that case was decided in a hand-written order with essentially no analysis. The analysis in *Baystate*, like *Emerson*, *Boston Medical Center*, and *Tenet Healthcare*, turned on allegations that "information about Doe's medical treatments," "her Facebook ID," and "approximately eighty of her communications" were sent to third parties—allegations that are not present here. 2026 WL 776861, at *3.

omits aiding and abetting liability. *Id.* at n.9. In fact, *Alves v. BJ's Wholesale Club, Inc.*, 2023 WL 4456956, at *7 n.15 (Mass. Super. Ct. June 21, 2023) ***rejected*** the argument that the installation of the Technology Vendors' code amounts to an actionable invasion, because merely adding code to a website did not invade the plaintiffs' privacy. Here, it was the Technology Vendors' code that allegedly directed Plaintiffs' browsers to send data back to the Technology Vendors. CAC ¶¶ 79, 89, 95-102. Plaintiffs' theory under which the Privacy Act could rope in thousands of government websites and millions of other entities that all use similar code should be rejected.

Plaintiffs next assert that they have alleged facts showing that "private" data was transmitted to third parties, which allegedly supports a reasonable expectation of privacy and is not even necessary for their intrusion theory of liability. That is wrong on both fronts. At most, the CAC alleges that data about navigation to the patient portal may have been shared, *e.g.*, CAC ¶¶ 4 n.4, 9, 18, 182-185, 294, which as shown above, at most suggests the visitor ***may*** be a patient. *See supra* § II.A.2. The allegations in the CAC to not support Plaintiffs' attempt to transform Website activities that anyone could undertake into patients' "communications with their healthcare provider," CAC ¶ 32, especially when Plaintiffs have not and cannot allege that the Website Technologies captured doctor's notes, medical bills, diagnosis information, or actual exchanges between individuals and their providers. In addition, the type of data at issue is relevant to intrusion claims. Plaintiffs ignore Massachusetts cases holding just that, *see Lawrence*, 2025 WL 2808055, at *15; *Alves*, 2023 WL 4456956, at *6, as numerous other courts across jurisdictions have held as well, *e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 426 F.Supp.3d 108, 122-23 (W.D. Pa. 2019); *In re Google, Inc. Priv. Policy Litig.*, 58 F.Supp.3d 968, 985, 988 (N.D. Cal. 2014).[10]

[10] Plaintiffs cite *Rodriguez v. Google LLC*, 2026 WL 252570, at *11 (C.D. Cal. Jan. 30, 2026) to argue that "the content or degree of sensitivity of the intercepted information" does not matter for an intrusion upon seclusion claim. Opp. 20. Not only is that statement incorrect for a Privacy Act claim, but the *Rodriguez*

Plaintiffs also cannot support their dissemination or intrusion theories by pointing to restrictions on disclosure of health information outlined in Atrius' Notices of Privacy Practices ("NOPP"). Opp. 20 (citing CAC ¶¶ 214-215). The NOPP that went into effect in September 2022 was clear that the "terms 'information' or 'health information'" covered "information we maintain that reasonably can be used to identify you and that relates to your physical or mental health condition, the provision of health care to you, or the payment for such health care." Mot., Ex. D, at 2. The browsing data at issue in the CAC does not meet these criteria and was not PHI maintained by Atrius. And the prior version of the NOPP similarly focused on PHI maintained by Atrius like medical records. *See* Mot., Ex. E at 1 (noting that Atrius "can use your health information and provide it to others who are treating you").[11] There is nothing inconsistent between these notices and Atrius' alleged practices regarding browsing data, underscoring why Plaintiffs' claim should be dismissed.

2. <u>The Breach of Fiduciary Duty / Duty of Confidentiality Claim Fails</u>

Atrius demonstrated in its Motion that Plaintiffs have not shown breach of a fiduciary duty of confidentiality that extends to their alleged activities on the Website or any resulting cognizable injury. Mot. 16-18. In response, Plaintiffs say their actions on the Website "related" to being Atrius patients and thus there is a sufficient connection to their "physician-patient relationship." Opp. 22. Not so. Unlike *Alberts v. Devine* and *In re Shields Health Care Group, Inc. Data Breach Litigation*, *id.* at 21-22, the alleged interceptions here do not involve "medical facts communicated to a physician" or "discovered by [a] physician through examination," 395 Mass. 59, 65 (1985), or

court even stated that "***[t]he nature of the data collected mattered***" when assessing whether to decertify the class at issue. 2026 WL 252570, at *11 (emphasis added).

[11] Exhibit E to the Cooke Declaration has been reattached to omit the inadvertent redactions. The NOPP is referenced in CAC ¶ 215 n.76 (citing to Atrius' Notice of Privacy Practices available at https://web.archive.org/web/20220517025937/https://www.atriushealth.org/patient-information/privacy-practices).

"patients' records," such as "private health diagnoses," 721 F.Supp.3d 152, 159 (D. Mass. 2024). Instead, the data at issue encompasses information like search terms, navigation to generalized pages on medical conditions, and treatment center locations, *e.g.*, CAC ¶ 171, none of which is related to medical information derived from or disclosed to a physician. *See Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021). As in *Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *5-6 (Mass. Super. Ct. Aug. 27, 2007), *see* Mot. 16-17, any fiduciary duty of confidentiality Atrius may owe does not extend to user Website interactions that Plaintiffs cannot allege resulted in the disclosure of data from patient records or medical bills. Nor is this case like *A.J. v. LMND Medical Group, Inc.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024), where the website at issue held itself out as an "online doctor's office." Indeed, Atrius stated that "use of the [W]ebsite" does not "establish a doctor-patient relationship." Mot., Ex. F, at 1.[12]

Plaintiffs' attempts to establish cognizable injury also fall flat. With respect to "loss" of value, the Court should reject Plaintiffs' invitation to ignore Massachusetts authority, and the decisions of numerous other courts, which require allegations Plaintiffs have not made here—that they show the data has become less valuable because they can no longer use it or monetize it. *See* Mot. 17. Likewise, loss of "privacy" cannot save Plaintiffs' claim, because Atrius did not invade any reasonable expectation of privacy held by Plaintiffs. *See supra* § II.B.1. Plaintiffs' "benefit-of-the-bargain" theory flounders because they have not alleged facts showing that any part of payments for medical services were assigned to cover supposed protection of online browsing data. Neither *Emerson* nor *A.J.* addressed this theory of injury for fiduciary duty claims, and a host of cases have rejected it. *See* Mot. 17. Finally, Plaintiffs' attempt to base injury on an unjust

[12] Plaintiffs assert that Atrius did not address how their "claims" also arise from alleged "commercial exploitation" of their "communications." Opp. 22. But that does not change the analysis because supposed "commercial exploitation" is not part of any fiduciary duty here. *See* Mot. 16-17.

enrichment theory fails for the reasons set forth in § II.B.4., *infra*, and because regardless of whether alleged enrichment can be used to value or measure injury, it does not show that Plaintiffs actually were injured. *See Moulton v. Puopolo*, 467 Mass. 478, 492 (2014).

### 3. Plaintiffs' Breach of Implied Contract Claim Fails

Plaintiffs' attempts to evade the fundamental flaws with their breach of implied contract claim are similarly unavailing.

Plaintiffs have no answer to their failure to allege consideration. The law is clear that HIPAA-mandated NOPPs cannot supply the requisite consideration. *See* Mot. at 18-19. Nor can Plaintiffs point to their status as alleged patients of Atrius. Any money they (or their insurer) paid for medical services was for medical services—not browsing activity data. *Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *4 (D. Mass. Sep. 11, 2023) ("Plaintiffs paid IWP for (and received) pharmaceutical services; they do not allege that they paid separately for storage of their PII."). Atrius also stated explicitly that the Website was for "general information," not related to the "practice" of medicine or the provision of "medical advice." Mot., Ex. F, at 1.

Plaintiffs try to elide the same critical distinction with respect to mutual assent. They first harp on the alleged interception of patient communications. Opp. 23. But again, the CAC only alleges the disclosure of browsing data, not patient data—such as patient names, contact details, or doctor's notes—that Atrius purportedly maintained. This stands in sharp contrast to *Tenet* and *Emerson*, where data ***held by the defendant*** was stolen or misappropriated. *See* 731 F.Supp.3d at 147-48; 2023 WL 8869624, at *3. Atrius' alleged disclosures do not change the analysis. The NOPP does not mention browsing data, and the Web Privacy Statement further precludes mutual assent with respect to Plaintiffs' claim by explicitly disclaiming any "doctor-patient" relationship with Website visitors. Mot., Ex. F. at 1. Plaintiffs also cannot escape their failure to allege that they were aware of, let alone read, the NOPP. Mot. 19. Proof of reliance is beside the point. Opp.

24. What matters is proof of assent, which is absent here.

Finally, for the same reasons that Plaintiffs have not shown actionable harm for their breach of fiduciary duty of confidentiality claim, they have not shown cognizable damages to state a claim for breach of implied contract. *See supra* § II.B.2.; Mot. 19.

4. Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs also cannot salvage their unjust enrichment claim. As Atrius demonstrated in its Motion, this claim fails because Plaintiffs do not allege facts showing they lack legal remedies or that they expected compensation for purportedly conferring a measurable benefit on Atrius.

Plaintiffs argue the availability of legal remedies does not matter because they "may plead" unjust enrichment "in the alternative." Opp. 25. But that misses the point. Regardless of whether unjust enrichment is pled in the alternative, Plaintiffs still have not shown that the assortment of legal remedies they seek—whether under the Wiretap Act or common law—are inadequate. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82-84 (1st Cir. 2020); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). None of the cases Plaintiffs cite address the adequacy of legal remedies.

Even if Plaintiffs had shown they lack an adequate remedy at law—and they have not—their claim still fails, because contrary to Plaintiffs' assertion, Massachusetts law requires them to plead facts showing an expectation of compensation. *See* Mot. 18-19; *Lewis v. Collective Brands, Inc.*, 2014 WL 4924413, at *2 (D. Mass. Sep. 29, 2014). The cases Plaintiffs cite are inapposite. *Vita* did not address any unjust enrichment claims, *see* 494 Mass. at 850-51, and *Tenet* simply relied on *Emerson*, *see* 731 F.Supp.3d at 151, which found that it was "a disputed fact issue" in the case. 2023 WL 8869624, at *5 n.11. The same was true in *A.J.* 2024 WL 4579143, at *4. Not so here, where Plaintiffs do not allege facts showing any expectation of compensation.

## III. CONCLUSION

As explained above and in the Motion, the Court should dismiss the CAC with prejudice.

Dated: April 1, 2026

Respectfully submitted,

By: */s/ Adam A. Cooke*

Anthony E. Fuller (BBO #633246)
Kayla H. Ghantous (BBO # 709197)
Rachel E. Record (BBO # 713579)
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA 02110
(617) 371-1000
anthony.fuller@hoganlovells.com
kayla.ghantous@hoganlovells.com
rachel.record@hoganlovells.com

Allison Holt Ryan (*admitted pro hac vice*)
Adam A. Cooke (BBO # 679637)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
allison.holt-ryan@hoganlovells.com
adam.a.cooke@hoganlovells.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2026, copies of the foregoing Defendant's Reply in support of the Motion to Dismiss were served via electronic filing through the Court's ECF system to:

Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO# 549049)
Patrick J. Vallely (BBO# 663866)
**Shapiro Haber & Urmy LLP**
One Boston Place, Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Attorneys for Jane Doe #1 and the Putative Classes***

J. Tucker Merrigan, BBO# 681627
Thomas T. Merrigan, BBO# 343480
Ryan Hawkins, BBO# 686289
Erin E. McHugh, BBO# 703701
**Sweeney Merrigan Law**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com
tom@sweeneymerrigan.com
rmh@sweeneymerrigan.com
emchugh@sweeneymerrigan.com

Foster C. Johnson (*pro hac vice forthcoming)*
David Warden (*pro hac vice forthcoming)*
Justin C. Kenney *(pro hac vice forthcoming)*
Nathan Campbell (*pro hac vice forthcoming)*
**Ahmad, Zavitsanos, & Mensing, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
fjohnson@azalaw.com
dwarden@azalaw.com
jkenney@azalaw.com
ncampbell@azalaw.com

Warren Postman (*pro hac vice forthcoming)*
Alex Dravillas (*pro hac vice forthcoming)*
**Keller Postman LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, Illinois 60606
(312) 741-5220
wpd@kellerpostman.com
adj@kellerpostman.com

***Attorneys for John Doe, Jane Doe #2, and the Putative Classes***

*/s/ Adam A. Cooke*
Adam A. Cooke

*Counsel for Defendant*